#### FOR THE

## COUNTY OF ORLEANS.

### APRIL TERM, 1847.

---

#### PRESENT,

Hon. ISAAC F. REDFIELD,⎫
Hon. DANIEL KELLOGG, ⎬ Assistant Judges.
Hon. CHARLES DAVIS, ⎭

---

## NATHANIEL WEST v. ISRAEL CUTTING.

Where a sale of personal property is absolute, and there is no fraud, the vendee cannot compel the vendor to receive back the article, *if it proves deficient in quality*; but he must resort to his action upon the warranty, if there were one.

Where the defendant sold to the plaintiff a quantity of tea, which proved not to be good, and the plaintiff returned the tea to the defendant, who received it, and said that he should have some good tea soon and would replace it, to which the plaintiff assented, it was held, that this did not prove an absolute contract of rescinding, which would make the defendant debtor to the plaintiff, either for the money, or for the tea, unless called for; and that it imported no obligation, on the part of the defendant, to carry the tea to the plaintiff.

In such case the obligation of the defendant, being merely to deliver tea when called for, could not, by mere lapse of time, become an obligation to pay money.

But in this case, which was an action on book account, the facts being very indefinitely stated by the auditor, the report was re-committed.

West v. Cutting.

BOOK ACCOUNT. Judgment to account was rendered in the county court, and an auditor was appointed, who reported the facts as follows.

The plaintiff's account contained a charge for cash, five dollars ;— and this was the only item, in reference to which controversy was had. This sum was sent by the plaintiff to the defendant for some tea. The tea was procured at the defendant's store, and was shortly after returned by the plaintiff to the defendant,—" it not being good." The defendant received the tea, and said that he should have some good tea soon, and would replace the tea returned with good tea. The defendant retained both the tea and the money, and never delivered any other tea to the plaintiff, nor did the plaintiff ever call upon the defendant for any other tea.

The auditor allowed this sum to the plaintiff; and the county court, December Term, 1846,—DAVIS, J., presiding,—accepted the report and rendered judgment thereon for the plaintiff. Exceptions by defendant.

*Merrill & Colby, Redfield* and *Peck* for defendant.

1. The plaintiff had no right to *rescind* the contract, by tendering back the tea and demanding the consideration paid, there having been no fraud found on the part of the defendant.

2. If it be claimed, that the defendant, by receiving back the tea, has conceded the right of the plaintiff to rescind the contract, then his concession must be taken with the condition annexed, that the plaintiff should have *other tea*, in lieu of the tea returned ; and it would seem there was a tacit assent, at least, to this arrangement, on the part of the plaintiff. *Weston* v. *Downs*, Doug. 23. 2 Com. on Cont. 66. But if we should concede that the contract was rescinded, no right of action would accrue to the plaintiff until after demand made. Jones on Bail. 52, n. *Brown* v. *Cook*, 9 Johns. 361. *Warner* v. *Wheeler*, 1 D. Ch. 159. *Topham* v. *Braddick*, 1 Taunt. 572. *Chadwick* v. *Divol*, 12 Vt. 499. *Stoddard* v. *Chapin*, 15 Vt. 443.

3. The action on book account will not lie to recover the $5,00 for tea returned. If there be no right to charge on book at the time of the delivery of the property, no subsequent contingencies can give it. *Nason* v. *Crocker*, 11 Vt. 463. *Slason* v. *Davis*, 1 Aik. 73. *Hall* v. *Eaton*, 12 Vt. 510.

68

*Cooper* and *Johnson & Prentiss* for plaintiff.

The money of the plaintiff is in the defendant's hands, which, *ex æquo et bono,* he ought not to retain. The sale was rescinded by mutual consent; but the money was not returned. The defendant agreed to replace the tea sent back; which he never did, although a reasonable time had elapsed before the commencement of this suit. It was money advanced on a contract, which the defendant neglected, or failed, to fulfil, and may be recovered back either in book account, or assumpsit for money had and received. *Rogers* v. *Miller et al.,* 15 Vt. 431. *Hickok et al.* v. *Ridley,* Ib. 42. *Stone* v. *Pulsipher,* 16 Vt. 428. *Giles* v. *Edwards,* 7 T. R. 181. *Weeks* v. *Hunt,* 13 Vt. 144. 1 Sw. Dig. 582. Book account and assumpsit are concurrent remedies, in such a state of facts. *Way* v. *Raymond,* 16 Vt. 371. *Weller* v. *McCarty,* Ib. 98.

No demand was necessary before suit brought. 1. Because a reasonable time had elapsed to return the money or send the tea. 2. Because the obligation rested peculiarly on the defendant. 3. Because it was a matter peculiarly within the defendant's knowledge, when he would have good tea; he was bound to replace the tea, when he received good tea, or to return the money; and the plaintiff was only bound to wait a reasonable time. Chit. on Cont. 732. 1 Chit. Pl. 362, 384. 10 Mass. 231. 16 Vt. 98. Ib. 87. 5 Vt. 451. 15 Vt. 42. 3 Vt. 58. 7 Vt. 223. 16 Vt. 372.

The opinion of the court was delivered by

REDFIELD, J. The questions of law arising in this case are nice, and not free from difficulty; and they are embarrassed with *inferences* of facts,—which can, *with propriety,* only be drawn by the auditor.

1. As the facts stand, the first inquiry is, could West compel Cutting to have taken the tea back? We think not. There is no pretence of any fraud on the part of Cutting, or of any agreement to take the tea back. The tea "was not good,"—a very uncertain definition of quality, and one which has been once held by this court to have no meaning, in a contract as to the quality of stoves; but the most, which could be made of it, is a warranty and a breach of it; which will only enable the vendee to recover damages for the breach, but will not entitle him to rescind and recover back the considera-

tion. This is well settled, both in this country and England⌿ *Thornton* v. *Wynn*, 12 Wheat. 183 ; 6 U. S. Cond. R. 508.

2. Was there any contract of absolute rescinding, so as to make Cutting a *debtor*, either for the money, or for the tea, *unless called for ?* We think not. There was no claim for the money. The defendant said he should have some good tea soon and would replace it ; and to this West assented ;—for by the report it does not appear but that he was personally present ; and if he were not, it would make no difference ; but we must take it as it is,—to this taking tea again he assented.

3. Was Cutting, then, to carry the tea to West ? The term "*replace*," used by the auditor, is not intended to determine this, we take it ; for if so, he could have been more explicit, and would have been, if that had been his intention ;—but this is either the language made use of, or its equivalent. We do not attach any such importance to it, as we might in a written contract ; for here we cannot know, that he used that word. If he said he would let Mr. West *have some tea again*, or *pay him that amount*, five dollars, *in tea*, or he should have some tea that *would suit*,—which is more probable, perhaps,—ten witnesses, who heard it, would use, each, different language in relating it, and the auditor still different from all, perhaps ;— so that all we understand the auditor to find on this point is, that the defendant said he would pay the plantiff in tea again, and the plaintiff acceded to it.

We think it obvious, then, that the defendant was not bound to deliver the tea, until called for, (unless there was some understanding to that effect,—and if so, it should be found by the auditor,) for two reasons ;—1, It is wholly inconsistent with the uniform custom and course of business in the country,—so much so, as to be almost ludicrous ;—2, One quality of what was such tea as the defendant bought and sold had been sent and returned ; there was, then, an improbability, that he would *send* again ; he would naturally choose to have the plaintiff *see it* and suit himself. This, then, seems to us the exact legal obligation of the defendant, at the time the tea was returned, as the facts are reported by the auditor.

4. If this is the legal obligation, then, of the defendant, we do not see how it becomes an obligation to pay money by *mere lapse* of time. If the defendant *were* to send the tea, doubtless he should

send it in a reasonable time; and if he fail, he is liable in this form of action. But if the plaintiff is to *call and take it*, then the defendant is not liable, until *called upon*, or until he consents to let it go in account,—which is not found, and is not an inference of law, and not a probable inference of fact, if the defendant had at the time no account against the plaintiff.

But the important facts, in regard to this case, should be more definitely found by the auditor. We think there must have been some definite understanding of the parties, at the time, in regard to this item; and that *should* govern, and it *can* be found by auditors; we think more proper, that the case should be determined upon the understanding of the parties, *at the time*, than upon any mere technical *legal intendment*. For this purpose the case will be referred to auditors in this court.

Judgment reversed, and case referred to auditors.