## ELIAS H. MATTESON v. HOLT & HAWKINS.

### Contract. Rescission.

The rule that the breach of an express warranty does not, in the absence of fraud, entitle the purchaser to rescind the contract of sale, considered and reaffirmed.

A purchaser may rescind the contract for fraud; but the right to rescind must be exercised at the earliest practicable moment after discovery of the ground therefor.

The defendant purchased a yoke of oxen of the plaintiff which were eight years old, but which the plaintiff fraudulently represented to be only seven years old. The second day after the defendants took the oxen, one E. informed them that, in his opinion, judging from their appearance, the oxen were nine years old. The defendants continued to use the oxen five days after that, when they returned them to the plaintiff, and notified him that they were not as represented; but the plaintiff refused to receive them. *Held*, that the defendants exercised their right of rescission within a reasonable time.

ASSUMPSIT for the price of a yoke of oxen sold by the plaintiff to the defendants, originally brought before a justice of the peace, and appealed to the county court and referred. The referee found the following facts:

On the 27th of April, 1870, the defendant Holt told the plaintiff that he wanted to purchase a yoke of oxen, not under five or over seven years of age—what work he wished them to perform —where they were to work—and that they must have good feet to hold shoes. The plaintiff said his oxen were only seven that spring, that they could do as much work as any other yoke of oxen, and that the foot of the ox with the broken claw, was all right, and only required a peculiar shaped shoe. On these representations, defendant Holt purchased said oxen for $180, agreeing to pay for them on the 15th of May, 1870, the plaintiff agreeing to have them shod anew all round, and to deliver them to the defendants on the 28th of April, 1870. The plaintiff carried out his agreement as to the delivery, but not as to the shoeing, of the oxen. The first day following the delivery, the oxen were put to light work. The second day, they performed the same amount of work, and threw their shoes. The same day they were taken to the shop of one Ellis to be shod. While there, Ellis called the attention of defendant Holt to the age of the oxen, and said that, in his judgment, they were nine years old, judging from the wrinkles on their horns; also, to the foot of the ox with a broken claw, that it was soft and spongy, and would not hold nails. The third day was Sunday. The fourth day they performed the same amount of work, and lost one shoe.

The fifth day they performed double the amount of work. The sixth day they performed no work. On the morning of the seventh day, the oxen were returned to the plaintiff during his absence, with a letter from the defendants that the oxen were not as represented by the plaintiff. On his return, the plaintiff refused to receive and treat the oxen as his property. One of the oxen was returned in good condition, the other, lame, and appeared as if foundered; since then, diseased, and of little value.

The defendants claimed that the oxen were incapable of endurance and performance in the service which was described, equal to any other yoke. The oxen while in the possession of the defendants, were not overloaded, overworked, or overfed, and were carefully handled, except at the time they were returned to the plaintiff, when they were driven too rapidly; but they were incapable of performing the work for which they were purchased by defendants.

The defendants claimed that the plaintiff fraudulently represented as to the soundness of the foot of the ox with the broken claw, and as to the age of the oxen not being over seven years. The plaintiff claimed that the defendants should have rescinded the contract, if at all, at the time their attention was called by Ellis to the age of the oxen being nine years, in his judgment, and to the unsoundness of the foot, and not to have continued their use until they were disabled, and then to have returned them. The oxen while in the possession of plaintiff, were capable of, and did perform hard service until about six weeks before the said sale, when the plaintiff had no work for them to perform at that season of the year; and the plaintiff did not know of the unsoundness of the foot of the ox with the broken claw, at the time of said sale. The plaintiff knew at the time of the sale that the oxen were eight years old, and he fraudulently represented their age to be only seven at the time of said sale to said defendant Holt.

The referee found for the defendants to recover their costs.

The court, at the December term, 1872, PIERPOINT, Ch. J., presiding, rendered judgment on the report for the defendants. Exceptions by the plaintiff.

*A. P. Tupper*, for the plaintiff.

The finding of the referee of the fact that the defendant Holt told the plaintiff where, and what work the oxen were wanted to perform, will not affect the plaintiff's right to recover the price, even though he finds that they " were incapable of performing the

44

work for which they were purchased " ; for the recommendation of the plaintiff that they could do as much work as any other yoke of oxen, was based upon his knowledge of what they had done, as mere commendation. 2 Kent Com. 484–5. " *Simplex commendatio non obligat.*"

The representations as to the broken claw were based on the plaintiff's knowledge. The defect was equally open to Holt, and was examined by him. The defendants run their own risk as to that.

The report finds that the oxen were one year older than the plaintiff represented, and that in this there was fraud. If fraud at all, it must have been such as would have prevented the trade. *Howard* v. *Gould*, 28 Vt. 523; *Paddock* v. *Strobridge*, 29 Vt. 470. At least it must have the effect to determine the defendants to rescind immediately upon discovery of the fraud, and on that account. *Downer* v. *Smith*, 32 Vt. 1.

The defendants were not at liberty to rescind the trade. If such had been their right, they were bound to rescind *in toto*, and place the plaintiff *in statu quo*. *West* v. *Cutting*, 19 Vt. 536; *Fay* v. *Oliver*, 20 Vt. 118; *Loomis* v. *Wainwright*, 21 Vt. 520, 528; *Hammond* v. *Buckmaster*, 22 Vt. 375; *Wallace* v. *Stone*, 38 Vt. 607; *Montgomery* v. *Bush*, 43 Vt. 167; Chit. Cont. 573; 2 Kent Com. 479, *et seq.* And in case of fraud, the defendants were not at liberty to rescind, if, after they had discovered the fraud, they put it out of their power to place the plaintiff *in statu quo*. *Downer* v. *Smith*, *supra;* 2 Kent Com. 480; Chit. Cont. 362, *et seq.;* 2 Stark. Ev. 645, and note; *Conner* v. *Henderson*, 15 Mass. 319; *Curtis* v. *Hannay*, 3 Esp. 82; *Hunt* v. *Silk*, 5 East, 449; *Hoadley* v. *House*, 32 Vt. 179.

Will the law permit the defendants to keep the oxen five days after they were informed that they were older than represented, spoil them, or one of them, and return them worthless ? Lord ELLENBOROUGH settles the question in *Curtis* v. *Hannay*, *supra*.

We deny that the facts reported are evidence of fraud. *Hoadley* v. *House*, *supra*.

*Stewart & Eldridge*, for the defendants.

The facts reported show a breach of contract by the plaintiff in every particular. The defendants contracted for oxen not exceeding a certain age, and capable of performing a particular kind of service, which was particularly described. They made inquiry in regard to the defective foot. It was stipulated that the oxen should be shod before delivery. In each of these particulars, there was a breach by the plaintiff. As to age, the referee finds expressly that the plaintiff's representations were willfully and knowingly false and fraudulent.

A sale of a chattel with a representation of its nature or quality, which is false within the knowledge of the party who makes it, vitiates the contract ; and such sale is voidable at the option of the vendee, who may either avoid it by returning the goods and bringing an action on the case for the deceit, or affirm it by keeping them, and give the fraud in evidence to diminish or defeat a recovery in a suit brought to enforce payment of the purchase money. *Downer* v. *Smith et al.* 32 Vt. 1 ; *Mallory* v. *Leach*, 35 Vt. 156 ; *Bryant* v. *Isburgh*, 13 Gray, 607.

The finding of the referee is conclusive as to the reasonableness of time within which the defendants exercised the right of rescission. The defendants were not only not bound, but would not have been justified in taking as conclusive, on the question of age, the mere opinion of the blacksmith, founded on certain appearances. They did, as the report expressly finds, use the cattle carefully in their business, and treat them well until they had ascertained the falsity of the plaintiff's representations, which was within several days, when they returned them.

Having received them upon a representation inducing the purchase, which the plaintiff knew was false when he made it, they returned them as soon as they were satisfied of the fact. The case shows only a portion of two days' service after the expression of the blacksmith's opinion, which was succeeded by an interval of one day's rest—the sixth day—and on the seventh day they were returned.

If necessary to the defense, it might with propriety be urged that, upon the facts found, the defendants had the right of rescis-

sion independent of fraud. The case of *West* v. *Cutting*, 19 Vt. 536, is relied on *per contra*. In that case, Judge REDFIELD assumes that the law is well settled the other way in this country and in England ; whereas, both reason and the weight of authority are that upon breach of express warranty, the right of rescission exists. *Bryant* v. *Isburgh*, 13 Gray, 607, and cases there cited.

It is a curious fact that in the leading English case of *Street* v. *Blay*, 2 B. & Ad. 456, relied upon in support of the rule as recognized in *West* v. *Cutting*, the question was not necessarily raised, because the vendee had himself sold the property without warranty, and repurchased it at a profit, so that the right of rescission was of course lost.

It will be found that the earlier English cases did not deny the right of rescission, and that the only point of objection relates merely to the form of action, on the ground that general assumpsit for money cannot be maintained, for want of notice that a question of warranty is to be tried.

In cases like the present, when the consideration has not been paid, and the defense is interposed as an answer to an action to recover the price, the reason of the objection wholly fails, and the application of the rule, as recognized in England prior to 1831, and at this time by at least three New England states, would prevent circuity of action, to say nothing of its intrinsic justice.

But, whatever view the court may take of this point, the finding of the referee upon the question of fraud must be conclusive.

The opinion of the court was delivered by

REDFIELD, J. This action is assumpsit to recover the price of a yoke of oxen. The defendants told the plaintiff that they wished " to purchase a yoke of oxen not under five nor over seven years of age ; what work they wished them to perform ; where they were to work ; and that they must have good feet to hold shoes." Plaintiff replied that " his oxen were only seven that spring ; that they could do as much work as any other yoke

of oxen, and that the foot with the broken claw was all right, and only required a peculiar shaped shoe." On these representations, defendants purchased said oxen, took the possession, and agreed to pay therefor $180 on a day named.

The report of the referee states that the broken claw was spongy, and would not hold a shoe; that the oxen " were incapable of performing the work for which they were purchased "; that they were over seven years old, at least eight, and that known to the plaintiff at the time of the sale. On the seventh day after sale, they were returned to the plaintiff by the defendants, with notice that they were not as represented. They were left in plaintiff's possession, but he refused to receive them. One of the oxen at that time " was lame, and appeared as if foundered, since that, diseased, and of little value."

The representation of the plaintiff, and relied upon by the purchasers, as to the condition and quality of the oxen, was doubtless a warranty, and the plaintiff liable in damages for the breach. But it has been held in this state that the breach of an express warranty does not entitle the purchaser to rescind the contract of sale. *West* v. *Cutting*, 19 Vt. 536; *Hoadley* v. *House*, 32 Vt. 180. The defendants are not content with these adjudications, and insist that the weight of authority is the other way; but we think otherwise. In Massachusetts and Maryland, their courts have held " that an express, or implied warranty may be treated as a condition subsequent, by the purchaser, and the sale avoided for the breach, if he sees fit to enforce the forfeiture." *Bryant* v. *Isburgh*, 13 Gray, 607; *Perley* v. *Balch*, 23 Pick. 283; *Dorr* v. *Fisher*, 1 Cush. 274; *Hyatt* v. *Boyle*, 5 Gill & Johns. 121. But these are exceptions to the general current of authorities, and we see no reason to question the statement of Ch. J. REDFIELD, in *West* v. *Cutting*, *supra*, that a broken warranty " will only enable the vendee to recover damages for the breach, but will not entitle him to rescind, and recover back the consideration. This is well settled, both in this country and in England." If this were not so; there is good ground for holding that defendants kept and used the oxen an unreasonable time after testing their quality, and learning that they were not what they were rep-

resented to be. The right of rescission must be exercised at the earliest practicable moment after discovery of the defect. The defendants were aware that the feet of the oxen would not hold shoes, as early as the second day after the purchase ; they kept and used them until the seventh. But the referee has reported that the plaintiff knowingly misrepresented the age of the oxen. It was an express stipulation of the contract, that the oxen were not to be over seven years of age. The fact that defendants made that express provision, is evidence that, to them, it was *material*, and that they would not have made the purchase if the truth had, in this respect, been told them. There is no doubt that a purchaser may rescind a contract for *fraud*. And, this representation being in a matter material to the purchasers, the defendants have the right to rescind the contract, if that right was timely exercised.

The defendants were informed by Ellis, their blacksmith, on the second day, that, in his judgment, the oxen were nine years old. He judged merely from their appearance. They continued to use them carefully after that for five days, and then returned them to the plaintiff, with notice that they were not what he represented. The suggestion of Ellis was a mere opinion, and not necessarily convincing evidence, but such as should put the defendants on inquiry. We do not think that the length of time the defendants kept the oxen after the suggestion of Ellis, under the circumstances, unreasonable, or that it should operate to bar the defendants' right of rescission.

The judgment of the county court is therefore affirmed.