Dolan, PJ.
This is an action in which the plaintiffs seek damages from the defendant Thomas C. Cordell, individually, and as he is Trustee of Cor-Lan Heights Realty Trust and Forgue Realty Trust. The complaint contains one count alleging deceit and one count alleging a violation of G.Lc. 93A.
The action centers around the alleged Mure of Cordell to return to the plaintiffs a $14,900 deposit paid by the plaintiffs under a written purchase and sale agreement. The court found for the plaintiffs against Cordell individually, and in his representative capacity, on both the tort and the c. 93A claims. The court awarded damages of $14,990 on the tort claim and triple damages of $44,970 on the c. 93A claim. The court specified that total damages not exceed $44,970, plus attorneys fees of $13,000 that were awarded on the c. 93A claim.
There was evidence tending to show that on June 4,1986, the plaintiffs, Anthony C. Cheng (“Anthony”) and Etran Chañe (“Etran”), executed a written purchase and sale agreement under the terms of which they were to purchase a condominium unit for $149,900. The agreement provided that it was contingent upon plaintiffs obtaining conventional financing from a recognized lending institution. If plaintiffs, having used all due diligence, failed to obtain a firm bank commitment on or before September 18, 1986, then, at plaintiffs’ option, the agreement was to become null and void and all deposits were to be returned forthwith. It further provided that if seller was not notified in writing by September 28, 1986 of plaintiffs’ desire to terminate the agreement, the contingency was to be deemed to have been waived by plaintiffs. The agreement named Thomas C. Cordell, Trustee of Forgue Realty Trust as the seller, the agreement was signed by Cordell, without any indication that he was acting in a representative capacity.
Etran spoke to Cordell on August 25,1986 on the telephone. She informed Cordell at that time that she and Anthony had been advised by two lending institutions that they were not acceptable candidates for mortgage financing. Cordell assured her that it would not be necessary for her to obtain a written objection from the banks in order to terminate the purchase and sale agreement between the parties. At that time, plaintiffs were prepared to complete the mortgage application process in order to receive a formal rejection of their financing applications from lending institutions and to notify Cordell in writing of their desire to terminate the agreement However, *164 Cordell told Etran “that legal stuff is not necessary.” Cordell explained to Etran that he could not provide an immediate reiimd, but that he had another interested buyer for the unit and that he anticipated returning the deposit in the foreseeable future. Between August 28, 1986 and October 15, 1986, Etran called numerous times to inquire as to the return of the deposit. On October 15,1986, Cordell again assured Etran that he intended to return the deposit as soon as a new buyer agreed to buy the unit which was then under construction.
The plaintiffs never notified Cordell in writing that they were unable to get financing. Cordell did not return the deposit and on November 26,1986 the plaintiffs sent a demand letter by certified mail, return receipt requested, pursuant to G.Lc. 93A, §9 demanding return of that deposit. Defendant’s attorney responded in writing by making a written tender to the plaintiffs in which an offer was made to allow plaintiffs additional time to obtain financing and to return $10,900 of their $14,900 deposit, if they were unsuccessful in obtaining financing.
The court found that the plaintiffs discovered shortly after they entered into the purchase and sale agreement that they would be unable to obtain mortgage financing and that they communicated this information promptly to Cordell and inquired of him as to whether he wished them to obtain some writing from them exercising their option to terminate the agreement and have their deposit returned. Cordell assured plaintiffs that “that legal stuff wasn’t necessary”. Cordell did indicate that he did not have the funds to return to the plaintiffs but assured them that he would soon have another buyer, either for this unit or some other unit, and would then have funds available to repay them. Cordell continued to assure the plaintiffs that their money would be returned to them until a time came, after the date provided in the purchase and sale agreement for exercise of the mortgage financing contingency, that Cordell raised, for the first time, the failure of plaintiffs to comply in formal fashion with the agreement.
The court found that Cordell orally waived the provisions requiring written notice, and that his subsequent conduct in refusing to return the deposit constituted an unfair and deceptive consumer practice as well as constituting common law deceit The court found the plaintiffs’ demand letter was a proper demand letter under the provision of the statute and that the response was not reasonable in that it called upon the plaintiffs to forfeit $4000 of their deposit when they were entitled to a return of the full amount of the deposit The court further found that Cordell was personally liable for the reason that he signed the agreement in an individual capacity and that he committed the tortious act of deceit
Cordell argues that plaintiffs did not use reasonable efforts to obtain financing. Whether the plaintiffs acted diligently is a factual question, the determination of which is entitled to the customary appellate deference. Lynch v. Andrew, 20 Mass. App. Ct. 623, 625 (1985). The court found that plaintiffs were unable to obtain financing. The trial judge was satisfied that the facts presented to him did constitute diligent efforts onthepartoftheplaintiffs. PursuanttoDist/Mun.Cts.R.Civ.P.,Rule52(a).“findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.” There is nothing in the record to suggest that the finding of the trial judge was clearly erroneous.
Defendant further argues that the award of multiple damages is in error for the reasons that plaintiffs’ demand letter was addressed to Cordell in his capacity as a trustee, not as an individual, a reasonable tender of settlement was made, and the judge made no specific finding that the act or practice was a willful or knowing violation of c. 93A, or that the refusal to grant the relief demanded was made in bad faith with knowledge or reason to know the act or practice complained of violated the provision of the statute.
Plaintiffs’ demand letter was addressed to Thomas C. Cordell, Trustee. It described the acts complained of, referred to the provision of c. 93A, and made demand on him *165 for the return of the deposit We believe the demand letter reasonably set forth the acts relied on and was sufficient to give the defendant, as trustee, an opportunity to review the facts and the law to see if the requested relief should be granted and to make a reasonable settlement offer so as to limit damages. We further believe that the answerofdefendantastrusteewasnotareasonablesettlementofferinthat it required plaintiffs to forfeit $4000 of their deposit when they were entitled to the return of the entire deposit. Even though there was no express finding that the violation of c. 93A was willful or knowing, we find no error in the award of multiple damages against the defendant as trustee.[3] Such an express finding need not be made so long as the evidence warrants a finding that the violation was willful or knowing. Service Publications, Inc. v. Goverman, 396 Mass. 567, 578 (1986). The evidence would warrant such a finding.
Attorney’s fees are appropriate when a violation of c. 93A has been established. The amount of reasonable attorney’s fees under c. 93A is within the broad discretion of the trial judge. DiMarzo v. American Mutual Ins. Co., 389 Mass. 85, 106 (1983). The record supports the amount of attorney’s fees awarded by the trial judge and we find no error.
The demand letter did not demand that Thomas C. Cordell, as an individual, return the deposit. Such a demand is a condition precedent to the bringing of an action for multiple damages under c. 93A. Tashjian v. Terranova, 1983 Mass. App. Div. 102, 103. The absence of a demand letter is a bar to suit Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 813 (1975). While separate letters are not always required when an individual acts in more than one capacity, the dual functions of the individual must be identified. Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 291 (1985). In this case, the demand letter did not identify the dual functions of Cordell and did not demand that Cordell pay $14,900 from his individual funds. We find error in the finding against Cordell as an individual on the c. 93A claim.
Cordell further argues that he cannot be held personally liable on the claim for deceit for the reason that he signed the purchase and sale agreement in his capacity as trustee. We find no merit in this argument. The finding is not that he breached a contract with the plaintiffs, but rather that he committed the tort of deceit by making false representations to the plaintiffs. Even though a person acts in a representative capacity, he may be individually liable in tort for damages he may cause another. Osborne v. Morgan, 130 Mass. 102, 103 (1881). His principal may also be liable under the doctrine of respondeat superior. Roach v. Hinchcliff, 214 Mass. 267, 270 (1913), see also G.Lc. 203, §14A.
The finding against Cordell as an individual on the c. 93 A claim is reversed. All other findings are affirmed.

 The measure of damages was not raised as an issue before this division.